UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No.: 3:19-cv-10184

TODD TAUPIER,
   Plaintiff

v.

DAVOL, INC.,
   Defendant

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL (LEAVE GRANTED BY ORDER OF COURT DATED SEPTEMBER 13, 2019)**

## PARTIES

1. The Plaintiff, Todd Taupier (hereinafter "Plaintiff" or "Taupier"), is a natural person, with a principle residence of 96 Pinehurst Road, Holyoke, Massachusetts 01040.

2. The Defendant, Davol, Inc., A Bard Company (hereinafter "Defendant" or "Davol"), its agents, employees and representatives, is a corporation transacting business within the Commonwealth of Massachusetts, with a principle place of business at 100 Crossings Boulevard, Warwick, Rhode Island 02886.

## STATEMENT OF FACTS

3. The Plaintiff re-states, re-alleges and incorporates by reference the allegations complained in paragraphs 1 through 2 of this complaint.

4. On or about October 21, 1999, Taupier underwent surgery for a left inguinal hernia at Massachusetts General Hospital in Boston, Massachusetts. The procedure was completed with the insertion of a Davol Bard Reconix ePTFE mesh patch.

1

5. On or about May 8, 2017, Taupier presented to the Holyoke Medical Center Emergency Department in Holyoke, Massachusetts. His chief complaint included sharp pain and cramping in the left pelvic area and in the left lower quadrant and left pelvis.

6. A CT scan of Taupier's abdomen and pelvis revealed inflammation consistent with a recurrent abscess involving the left anterior wall centered around his surgical mesh.

7. Imaging confirmed Taupier's abscess was considerably worse than a previous CT scan performed on April 3, 2017.

8. Diagnosis of Taupier's symptoms revealed perforated sigmoid diverticulitis with an abscess formation with probable infection of the surgical mesh which was identified in the left inguinal canal.

9. Dr. John Mazzucco concluded the mesh would need to be removed and Taupier was immediately admitted at Holyoke Medical Center.

10. On May 10, 2017, Taupier underwent surgery with Dr. Mazzucco at Holyoke Medical Center. He was administered general anesthesia. Dr. Mazzucco identified and removed the infected left inquinal mesh and drained the left inguinal abscess. Dr. Mazzucco closed the skin with staples.

11. On May 15, 2017, Dr. Mazzucco performed a laparoscopic sigmoid resection with mobilization of the splenic flexure on Taupier under general anesthesia.

12. Taupier was admitted to the Med-Surgical floor for observation following the procedure.

13. Taupier continued his postoperative course at Holyoke Medical Center. His Foley catheter was removed and he was ambulated.

14. On May 19, 2017, Taupier completed an 11-day course of IV Levaquin and Flagyl. Some of his left inguinal staples were removed and he was discharged home in stable condition.

15. Taupier did not know of or have reason to know of the mesh patch's failure until he experienced the aforementioned symptoms.

16. Taupier has incurred medical bills, lost wages, prolonged and sustained pain and suffering and permanent scarring as a result of the mesh patch.

17. Taupier has suffered and continues to suffer an impairment of his ability to enjoy life and attend to his usual activities as a result of the failure of the mesh patch.

18. The ePTFE mesh used in the manufacture of Davol's Reconix mesh patch, which was implanted in Taupier, was unreasonably dangerous and defective.

19. Specifically, the ePTFE mesh migrated and/or deteriorated over time in Taupier's body. As it moved positions, the material perforated Taupier's large intestine and directly led to his injuries.

20. Davol's ePTFE mesh had a propensity to allow bacteria to enter and hide from defenses designed to eliminate them. The bacteria can secrete an encasing slime which protects them from destruction by the human body's defenses including white blood cells.

21. Davol's ePTFE mesh had a propensity to shrink 30%-50%.

22. Davol's ePTFE mesh was known to depolymerize and stress crack after implantation in the human body.

23. Davol'a ePTFE mesh was known to flake and crack which leads to degradation.

24. Davol knew or should have known of the defective and dangerous nature of the ePTFE mesh patch at the time of Taupier's implant.

25. At the time of his operation, Taupier was not informed of and had no knowledge of the known complications and risks associated with the ePTFE mesh patch.

26. Davol failed to implement adequate procedures and systems to track, report and evaluate complaints with regard to its ePTFE mesh patch.

27. Davol failed to perform proper and adequate testing and research in order to evaluate the risks of its ePTFE mesh.

## COUNT I (TAUPIER V. DAVOL/BREACH OF WARRANTY)

28. The Plaintiff re-states, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 27 of this complaint.

29. Davol manufactured and sold a defective mesh patch that created the risk and caused the injuries to Taupier. Davol's defective mesh patch reached its intended consumers without substantial change from the condition in which it was sold by Davol.

30. Davol is subject to liability to Taupier for its breach of express and implied warranties made to its consumers, including the implied warranties of merchantability and of fitness for a particular use within the scope of Massachusetts General Laws Chapter 106, §2-313, §314 and §315. Specifically, Davol expressly warranted, through its mesh patch, and by the statements and conduct of its employees and agents, that the mesh patch was fit for use, and not otherwise adulterated or injurious to health.

31. Davol's mesh patch used in Taupier's surgery was defective and would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

32. Davol's mesh patch used in Taupier's surgery was not fit for the use and purpose intended by Davol and was therefore in breach of the implied warranty of fitness for its intended use.

4

33. Davol owed a duty to its consumers and to Taupier to manufacture and sell a mesh patch that was not adulterated, was fit for use, was reasonably safe in construction, and was free of substances injurious to human health. Davol breached this duty.

34. Davol owed a duty to its consumers and to Taupier to sell a mesh patch that was safe to the extent contemplated by a reasonable and ordinary consumer. Davol breached this duty.

35. Davol's breach of express and implied warranties was the proximate cause of Taupier's injuries.

**WHEREFORE,** the Plaintiff requests the Court:

    A. Award judgment in his favor against Davol in an amount deemed reasonable and just;

    B. Award him interest, costs and attorney's fees;

    C. Award such other relief as this Court deems just and proper.

## COUNT II (TAUPIER V. DAVOL/ NEGLIGENCE)

36. The Plaintiff re-states, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 35 of this complaint.

37. Davol knew or should have known that the design of its ePTFE mesh was reasonably certain to be dangerous when installed in the human body, including the way it was installed into Taupier's body.

38. Davol breached its duty of reasonable care owed to Taupier as set forth above by the manner in which it designed its mesh product in failing to give adequate warning of the dangers known to it or which in the use of reasonable care Davol should have known and which a user of its mesh products ordinarily would not discover, and Davol breached its duties of

reasonable care to provide adequate instructions so the products could be used safely when used as intended.

39. As a direct and proximate consequence of the defective design and labeling of Davol's products, Taupier suffered injuries and damages and will continue to suffer permanent pain and suffering, emotional distress, loss of enjoyment of life, as well as other general or non-economic damages, in addition to past and future special damages in the form of medical expenses and other costs associated with the care and treatment of these injuries, wage loss or loss of earning capacity, or other economic loss.

40. Taupier is also entitled to punitive damages because Davol's conduct was wanton, grossly reckless, grossly negligent, and/or in conscious disregard of Taupier's rights, health, and safety.

**WHEREFORE,** the Plaintiff requests the Court:

   A. Award judgment in his favor against Davol in an amount deemed reasonable and just;

   B. Award him interest, costs and attorney's fees;

   C. Award such other relief as this Court deems just and proper.

## COUNT III (TAUPIER V. DAVOL/STRICT LIABILITY)

41. The Plaintiff re-states, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 of this complaint.

42. As set forth above, the mesh product placed in Taupier was unreasonably dangerous and defective and not reasonably safe for its intended or reasonably foreseeable purposes because it did not have correct, adequate and complete warnings and instructions issued in language

that was direct, unequivocal and sufficiently forceful to adequately explain and warn of the hazards of the product or the way to use the product safely.

43. Davol's sale, marketing, distribution, and supplying of a defective, inadequately labeled product to Taupier's surgeon, and ultimately Taupier, were a substantial factor in causing Taupier to suffer injuries and damages.

44. Taupier has suffered and will continue to suffer permanent pain and suffering, emotional distress, loss of enjoyment of life, as well as other general non-economic damages, in addition to past and future special damages in the form of medical expenses and other costs associated with the care and treatment of these injuries, wage loss or loss of earning capacity, or other economic loss.

45. Davol is strictly liable to Taupier.

46. Taupier is also entitled to punitive damages because Davol's conduct was wanton, grossly reckless, grossly negligent, and/or in conscious disregard of Taupier's rights, health, and safety.

**WHEREFORE,** the Plaintiff requests the Court:

    A. Award judgment in his favor against Davol in an amount deemed reasonable and just;

    B. Award him interest, costs and attorney's fees;

    C. Award such other relief as this Court deems just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS AND ISSUES.**

Dated: October 25, 2019          Respectfully submitted.
Todd Taupier,
By his Attorneys,

s /Timothy Kotfila/

Timothy M. Kotfila    BBO# 600633
Richard T. Jordan    BBO#564502
Attorneys for Plaintiff
Kotfila & Jordan
One Monarch Place, Suite 1340
Springfield, Massachusetts 01144

Phone: 413-736-0077 / 413-781-5399
Fax: 413-736-3300

## CERTIFICATE OF SERVICE

I, Timothy Kotfila, attorney for the Plaintiff, hereby certify that I have this day served the foregoing First Amended Complaint and Demand for Jury Trial on all parties by serving a copy of the same, via ECF, to counsel of record:

Doyle C. Valley,
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

Dated: October 25, 2019            /s/ Timothy Kotfila
                                   Timothy Kotfila